# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5867 | **DATE** | 2/15/2002 |
| **CASE TITLE** | Dianne Kampinen vs. Individuals of Chicago Police Dept. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's motion to compel U.S. Secret Service to deliver unredacted copies of documents [#41] is granted in part and denied in part. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANNE KAMPINEN, | ) |
| | ) No. 00 C 5867 |
| Plaintiff, | ) |
| | ) Judge George M. Marovich |
| vs. | ) |
| | ) |
| INDIVIDUALS OF CHICAGO | ) Magistrate Judge |
| POLICE DEPARTMENT, et al. | ) Arlander Keys |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Dianne Kampinen, moves this Court to compel Defendant, Individuals of Chicago Police Department, et al., to produce all of its files on Plaintiff. In response to Plaintiff's subpoena, Defendant produced redacted copies of most of its files regarding its investigation and detention of Plaintiff, but claims that it was withholding information protected by the confidential information and/or law enforcement privileges. For the reasons set forth below, Plaintiff's Motion is Granted in part, and Denied in part.

## BACKGROUND FACTS

In 1998, Plaintiff was a 50 year old woman employed as a security guard at a downtown Chicago office building. On September 25, 1998, Plaintiff, while on her lunch break, walked over to the Mercantile Exchange to observe President

---

[1] Plaintiff's Motion for Leave to File a Reply to the United States Secret Service's Response is granted.

Bill Clinton's visit. Although the area was secured and the visit was private, Plaintiff managed to bypass most security stations, apparently because she was wearing her security guard uniform. Finally, as she neared the secured area where the President was speaking, an unidentified secret service agent informed Plaintiff that she should not be in the area.

Before Plaintiff could exit the Mercantile Exchange Building, Officer Guarnieri and Officer Love, of the Chicago Police Intelligence Unit, escorted Plaintiff to a private room to question her regarding her presence in the secured area. When Plaintiff was unable to produce any identification, she suggested that the officers contact her boss to verify her identity. Secret Service Agent Arndt arrived shortly thereafter, and informed Plaintiff that she was being detained because she had entered a secure area without authorization. Defendants questioned Plaintiff about how and why she entered the area.

Concerned about Plaintiff's lack of identification, Defendants accompanied Plaintiff to her place of employment to retrieve her purse. Once they arrived, Plaintiff produced her purse and permitted Defendants to search its contents. Inside or near Plaintiff's purse, Defendants discovered and read Plaintiff's journal and certain newspaper clippings. Plaintiff's journal made several references to President Clinton, his visit to Chicago, and revealed that Plaintiff had discovered the

2

location of the President's arrival point at the Mercantile Exchange – information that had not been published -- by interviewing loading dock employees. One of the newspaper clippings, entitled "Secret Service Challenges Assassin Stereotypes," further piqued the Secret Service Agency's (the "Agency") interest in Plaintiff's motives for entering the area.

That evening, Plaintiff was taken to the Maxwell Street Police Station in Chicago, where she was arrested for criminal trespass. At approximately 3:30 a.m. Saturday morning, Officers escorted Plaintiff to Northwestern Memorial Hospital's psychiatric ward ("Northwestern"). Plaintiff conferred with a crisis worker and a psychiatrist to discuss the advisability of signing an admission for evaluation. Plaintiff signed the form, but claims she did so under duress.

During her stay at Northwestern, Plaintiff consulted with a psychiatrist on a few occasions. In the meantime, Defendants conducted a thorough investigation of Plaintiff. Secret Service Agents ("Agents") interviewed Plaintiff's family, neighbors, and former employers in an attempt to assess whether Plaintiff was a threat to anyone under Agency protection.

On Monday, September 28, 1998, Agents visited Plaintiff at Northwestern to request her consent to search her apartment. Plaintiff signed the consent form, adding the condition that an attorney be present during the search. However, Plaintiff was

unable to retain an attorney to observe the search. Plaintiff was released from Northwestern on Tuesday, September 29, 1998. Later that day, Plaintiff accompanied the Agents while they searched her apartment.

Plaintiff filed suit against the individual Chicago Police officers and Secret Service Agents involved with her arrest and detention. Plaintiff alleges that the Defendants' conduct violated 42 U.S.C. § 1983, and her constitutional rights as set forth in *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). When Defendants refused to produce copies of the Agency's full, unredacted files on Plaintiff, Plaintiff filed this Motion to Compel.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved." Rule 26's presumption in favor of discovery is overcome by the existence of a privilege. In response to Plaintiff's Motion to Compel, Defendants argue that the withheld information is protected by the confidential informant information and law enforcement investigative information privileges. The Court will discuss each privilege, and the allegedly privileged information, in turn.

**A. Confidential Informant Information Privilege**

4

"The 'confidential informant privilege' protects from disclosure an informant's identify and his communications with the government that may tend to reveal his identity." *United States v. Valles,* 41 F.3d 355, 358(7th Cir. 1994) (citing *Roviaro v. United States*, 353 U.S. 53 (1957)). The purpose of the privilege is to encourage individuals to assist in governmental investigations without fear of reprisal. *Dole v. Local 1942, Int'l Brotherhood of Electrical Workers, AFL-CIO,* 870 F.2d 368, 372(7th Cir. 1989) (noting that the threatened reprisal may be subtler than actual physical duress).

The privilege, which applies in both civil and criminal cases, is arguably greater in civil cases, because civil litigants are not entitled to all of the constitutional protections afforded to criminal defendants. *Id.* Moreover, the government need not establish that the disclosure of such information could lead to reprisal or retaliation against the informant. Rather, this limited privilege is granted to the government as of right. *Valles,* 41 F.3d at 358. The privilege is not absolute; it yields when the communication is "essential to a balanced measure of the issues and the fair administration of justice." *Dole*, 870 F.2d at 372 (court must determine whether the party's need for the information outweighs the public's interest in encouraging citizens to assist the government in its investigations.)

In making this determination, a court should consider the significance the informer's identity and testimony would have on the party's case. *Valles*, 41 F.3d at 358 (distinguishing between informants playing "major roles" in an investigation and those with mere peripheral involvement.) "The privilege will not yield to permit a mere fishing expedition . . . nor upon bare speculation that the information may possibly prove useful." *Dole*, 870 F.2d at 373.

Defendant claims that the information corresponding to the following redaction numbers is protected by the confidential informant information privilege: Nos. 6, 13-31, and 33-42. The Court has reviewed, *in camera,* the redacted information sought by Plaintiff, and concludes that Plaintiff's need for most of the information does not outweigh the public's interest in maintaining its confidentiality.

Plaintiff claims that the redacted material may show a lack of probable cause for her arrest and detention  The Court disagrees. First, this information was peripheral to the Agency's decision to arrest and detain Plaintiff. The redacted information consists, substantially, of the names of and statements made by Plaintiff's family members, neighbors, and former employers, who were willing to discuss Plaintiff with the Agency. The Court finds that the Agency's concerns regarding Plaintiff were piqued, not by the information obtained from these

6

informants, but by Plaintiff's unauthorized presence in a secured area, her journal entries, the "assassin" newspaper clippings, and her erratic behavior. In light of this, Plaintiff's suggestion that anything these non-health professionals might have told the Agency would have warranted her immediate release, prior to the completion of a full investigation, is dubious.

The Court further notes that many of these individuals agreed to speak with the Agency on the condition of anonymity. The Court is not inclined to waive that confidentiality based upon Plaintiff's speculation that this evidence might assist her case, particularly given Plaintiff's history of harassment.[2] And while Plaintiff contends that she knows the identity of the informants, this is pure conjecture. Moreover, even though Plaintiff is familiar with the pool of individuals that might have been contacted, she does not know which informants revealed what information.

The information contained in redact numbers 37 and 39, however, does not raise anonymity concerns. The redacted information consists of an Agent's summation of the informants' testimony. The Court finds that the Plaintiff's need for this information outweighs the public's interest in withholding it.

---

[2] The evidence indicates that, in the past, Plaintiff has pursued harassing telephone campaigns seeking to converse with persons such as Donald Trump and certain Secret Service Agents. Plaintiff also allegedly threatened to sue one of her neighbors for allegedly speaking with the Agency about Plaintiff.

7

Because the information consists of a summation of the informant's testimony, it satisfies Plaintiff's need for evidence regarding what the Agency discovered about her and when, without specifically identifying who made a specific statement.

Moreover, the Agency's interests in maintaining confidentiality with regard to its methodology is not compromised by revealing this information. The statement is merely a summation of what the informants said, and does not disclose questions the Agency might have asked or procedures used in obtaining this information. And while the statement reveals that the Agency was questioning Plaintiff's family, neighbors, and former employers about Plaintiff and whether she might have been a threat, there is nothing confidential about this information. The materials the Agency has already disclosed confirm as much.

Because the Agent's summation does not reveal Agency methodology or techniques, and because the information is relevant to Plaintiff's claims, the Court finds that the privilege does not apply with respect to numbers 37 and 39.[3]

---

[3] This information is more appropriately analyzed under the law enforcement investigative information privilege, but is nevertheless discoverable. In addition, the Court is unable to comment on the information contained in redact numbers 41-42, as it has only redacted versions of the corresponding documents. The Court directs Defendants to disclose this information to Plaintiff if, consistent with this Opinion, it is not privileged. If Defendants believe that, consistent with this Opinion, the redacted information is privileged, the Court directs Defendants to submit unredacted versions of these documents to the Court for review.

## B. Law Enforcement Privilege

The law enforcement privilege is a qualified privilege. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984). In determining whether the law enforcement privilege exists, courts must consider the following factors:

> 1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; 2) the impact upon persons who have given information of having their identities disclosed; 3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; 4) whether the information sought is factual data or evaluative summary; 5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; 6) whether the police investigation has been completed; 7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; 8) whether the plaintiff's suit is non-frivolous and brought in good faith; 9) whether the information sought is available through other discovery or from other sources; and 10) the importance of the information sought to the plaintiff's case.

*Friedman*, 738 F.2d at 1342-43 (citations omitted.)

The Agency offers two compelling reasons for applying the privilege in this case. First, the Agency relied upon some of the redacted material in developing its security plans. Next, the redacted information describes those factors that trigger the Agency's interest in a particular subject and the factors that the Agency uses in risk assessments.

Against this, Plaintiff argues that, because the investigation is closed, she should be allowed access to the Agency's files. The Court disagrees. It is clear that the

9

Agency's interest in protecting the redacted information outweighs Plaintiff's need to discover it. The fact that the investigation is closed has little bearing upon the Agency's need to keep secretive information bearing upon witness profiles, risk assessments, and security plans.

The Court's *in camera* inspection of the materials withheld under this privilege reveals that, while the information is inextricably intertwined with confidential Agency functions, it has little bearing upon Plaintiff's constitutional claims. Some of the information concerns the Agency's evaluation of Plaintiff long after her detention, and, therefore, has little relevance to her initial arrest and detention.

With regard to statements made by Plaintiff's treating mental health providers, however, the Court finds that Plaintiff's need for the information outweighs any interest the Agency has in protecting it. Central to Plaintiff's case is her argument that the Agency possessed information that Plaintiff was not a risk to persons under the Agency's protection prior to Plaintiff's release. The redacted information - her health professional's assessment of Plaintiff - is certainly relevant to this inquiry.

Moreover, the concerns that justify protecting the information previously deemed privileged are simply not present here. Plaintiff knows the identity of her treating physicians,

and knows that the Agency spoke to her physicians regarding her mental stability - Plaintiff had to sign a waiver granting the Agency permission to do so. As such, there is little interest in protecting their identity or the fact that they were interviewed.

With regard to the substance of the disclosure, the information does not reveal the Agency's request for specific information or otherwise disclose the Agency's risk assessment process. Nor does the information reveal insight into Agency methodology. Therefore, Plaintiff's Motion to Compel is Granted with respect to redact numbers 10, 12, and 51. However, the Court further finds that redact number 32 is privileged information, as it primarily concerns the Agency's assessment of the investigation, and not the physician's assessment of Plaintiff. The Court denies Plaintiff's Motion to Compel as to all other documents listed in the privilege log as protected by the law enforcement investigative information privilege.

## C. Additional Documents

Initially, the Agency withheld, in their entirety, three documents: 1) its Protective Intelligence worksheet; 2) an October 1, 1999 incident report; and 3) a copy of the Agency's Prism Subject abstract. The Agency subsequently produced an unredacted copy of the Intelligence worksheet, and redacted copies of the incident report and Prism Subject abstract. The Court finds that the remaining redacted information (with the

exception of number 51, discussed above) is properly privileged under the law enforcement investigative information privilege, as the redacted information concerns Agency codes and classifications. The Court concludes that the Agency's need to maintain the confidentiality with respect to such information outweighs Plaintiff's interest in discovering it.

## CONCLUSION

For the reasons set forth above, the Court finds that almost all of the redacted information is protected by the confidential informant information privilege or law enforcement investigative information privilege. The Court finds, however, that Plaintiff's need to discover her physician's assessment of her mental condition, as well as the summation of the informants' testimony, outweighs the Agency's interest in protecting this information. Therefore, Defendants will produce this information, in accordance with this Opinion and Order.

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion to Compel be, and the same hereby is, **GRANTED IN PART**, and **DENIED IN PART**.

FEBRUARY 15, 2002

ENTER:

*Arlander Keys*

ARLANDER KEYS
United States Magistrate Judge